Wм. W. Roark, and others, executors of J. McMaster, deceased, et al., plaintiffs in error, vs. Green B. Turner, defendant in error.

[1.] A defendant may be sued in the same action in his two characters, of executor of the maker of a promissory note, and of individual endorser.

[2.] In a suit on a promissory note by the endorsee against the endorser, the recovery cannot be reduced by showing that the endorsement was made on a sale of the note for a less sum than that expressed in the face of the note and claimed in the suit. Benning J. dissenting.

Assumpsit, in Fulton Superior Court.　Tried before Judge Bull, April Term, 1859.

This was an action of assumpsit, brought by Green B. Turner, endorsee, vs. W. W. Roark and others, executors of J. McMaster, and W. W. Roark, and William Gilbert, endorsers, to recover the amount of a promissory note.

1st. Before the case was submitted to the jury, the defendant Roark moved to dismiss the case or compel the plaintiff to amend, on the ground, that the same person Roark could

not be sued in the same action in two characters, to-wit: as executor of the maker, and individually, as endorser. The Court overruled the motion and defendant excepted.

2d. Plaintiff then moved to strike a plea put in by Roark, to the effect, that Roark had endorsed the note to the plaintiff on a sale of it, for a less sum than the face of the note showed due at that time, and praying that the plaintiff should be allowed judgment only for the sum he had paid for the note with interest thereon.

The Court sustained the motion, and defendant excepted. The plaintiff then took a verdict against all the parties for the full amount of the note.

HAMMOND & SON, for plaintiffs in error.

CALHOUN, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

[1.] We are all agreed, that there is no difficulty in sustaining this action against Roark in his two characters, as executor of the maker, and as individual endorser. The judgment goes against him in the one character, *de bonis testatoris,* and in the other, *de bonis propriis.* We cannot see how any difficulty is created by the circumstance that both characters happen to be united in the same person.

[2.] Upon the other point, Judge BENNING dissents from a majority of the Court. I shall not at all discuss the common law authorities on this subject, because I think the question is settled by our statute of 1826—*See Cobb's Dig. p.* 594. That statute declares, that "whenever any person whatever endorses a promissory note or other instrument, he shall be held, taken and considered as security to the same, and be *in all respects bound as security,* until said promissory note or other instrument is *paid off* and *discharged.*" It

Roark et al., vs. Turner.

is obvious that these words make an endorser liable to the *same extent* as a *surety*. Now, a surety is a maker, and is liable to the same *extent* as the principal. True, he is released by some things which leave the principal bound, but while bound at all, he is bound to the same extent with the principal. As much money as the principal is bound to pay, just so much is the surety bound to pay. It becomes necessary then for the plaintiff in error to maintain that the *maker* of a promissory note, whether principal or surety, is bound to pay the holder only so much as the note has cost him. And this position *is* taken, and is based upon the idea that the promissor is not bound beyond the extent of the consideration which he receives for the promise; that when the promise is to pay one sum, while the consideration is a less sum, all of the *excess* is without consideration, and is therefore not obligatory; that there must be an *equipoise of values* whenever the nature of the case admits of an exact equality between the consideration and the promise. If the consideration on *both sides* was money, this reasoning might do, for in that case an exact equipoise of values might be had; but the fallacy of the reasoning when applied to other cases, consists in assuming that in such other cases, equality of values is attainable. When a man gives his due-bill for a hundred dollars in consideration of only fifty dollars which he receives cash in hand, who can say he has necessarily made a bad trade? There are some men who would make exactly fifty dollars by every such operation which they could get a chance to perform. There are others who would lose fifty, and others still who would probably come out about even, for their estates after death (an event which might well happen before payment of their due-bills,) would pay about fifty dollars in the hundred. A promise is a species of property, a *chose in action*, and has no more a fixed money value, than a horse or a negro has. The value of each is a matter of judgment. It is not pretended that the law can ascertain the exact equivalent for a horse, and how

can it ascertain the exact value of a promise? I understand the rule of law to be, that the obligation of the promise is not limited by the size of the consideration (where there is any consideration at all, as there is in this case) but only by its *own terms*. For the reason, that the law cannot weigh the value of the promise, it leaves the parties to adjust it by their *contract*. Where there is any consideration, the contract of the parties is the law of the case, unless the contract is against law. Now, there is no pretence that it is any more against law for the maker of a promissory note to pay the sum expressed in the note, than to pay what the note may have cost the holder. Then the *promise* is the thing which is to control, and the promise is to pay the sum expressed in the note; not what the note may cost the holder. This is the promise of every maker, surety as well as principal, and under our statute, an endorser makes the same promise. It is binding upon all of them to the same extent, and for the same reason; because it is their lawful contract. It will be observed that there is no question of *usury* in this case. Usury is what is paid or promised for forbearance of day of payment; for giving day of payment; but here the endorser did not have the element of *time* in his contract; he simply endorsed or backed or guaranteed another's contract as already made. The contract is confessedly untainted with usury, and is a lawful contract which binds the endorser, in the language of our statute "till the note is *paid off* and *discharged.*"

Judgment affirmed.

BENNING J. dissenting.

One of the judgments of this Court, is, that the decision of the Court below, overruling the plea, was right. From that judgment, I dissent. I think that the plea was a good plea. Roark was the immediate endorser of Turner, the plaintiff

below. There was then a contract of endorsement as between them two. The note endorsed was for $1,950. The plea was, that Roark did not receive for his endorsement, as large a sum as $1,950, by about $200.

The endorsement amounted to a promise by him, to pay $1,950, in consideration of receiving $1,750. Now I say that, for this promise, there was a want of consideration, to the extent of $200. The case differs in no material respect, so far as I can see, from the case in which, the maker of a promissory note, makes the note for $1,000, and receives from the payee, only $500. In each case, it is equally true, as it seems to me, that there is a partial want of consideration for the promise.

And whenever there is a partial want of consideration for any promise, the promissor may plead it, to a suit on the promise, brought by the promisee. This is a general principle, which, I may, I suppose, assume.

But not only is the plea supported by this general principle ; there are a number of decisions by which, it is supported. Some of these I will give, as stated in the notes to Chitty on bills.

" *Darnell vs. Williams*, 2 *Stark Rep.* 166. Payee against acceptor of a bill for 19*l.* 12*s.* Defendant proved, that he had value for only 10*l*, and that he accepted for the rest, to accommodate the plaintiff. And, per Lord Ellenborough, though this, as to third persons, is a bill for 19*l.* 12*s*; yet as between these parties, the acceptance is for 10*l.* only; and that sum having been paid before the action, he nonsuited the plaintiff." *( Chitt. Bills,* 81 *Note i.)*

So, in the present case, Roark having had value for only $1,750, is to be considered with respect to the other $200, as an endorser for the accommodation of Turner the endorsee. If he had had value for no part of the $1,950, that he would have been an accommodation endorser, for Turner, as to the whole $1,950, none I suppose will dispute. The difference

in the two cases is only one of degree.   At any rate, we must say, that he was an endorser without consideration, as to the $200.

"*Barber vs. Backhouse, Peake Rep.* 61.   In an action on a bill of exchange, by the payee, the defendant paid part of the money into Court, and it appeared upon the trial, that there was no consideration for the other part ; Law, however, urged, that the payment of the money into Court, admitted the bill was good for part, and if it was good in part, it was good *in toto ;* but Lord Kenyon declared himself clearly of a contrary opinion, upon which, the jury found for the defendant, and this case being afterwards mentioned by Lord Kenyon, in the course of argument, Law said he was perfectly satisfied with the decision." *(Id. 83 note y.)*   In this case, the defendant was, it is likely, the drawer; and an endorsement, our case, is but a new drawing in favor of the endorsee, as payee.

Strongly to the same effect, are *Weffen vs. Roberts,* (1 *Esp. Rep.* 261, *Chit. Bills* 81, *note k ;)* and *Jones vs. Hibbert (2 Stark Rep.* 304, *Chit.* 81, *note k.)*

These cases and others, of the same import, are, I believe, cited as authority, in *Story on Bills ; Byles on Bills ;* and *Bailey on Bills.*   They and the general principle aforesaid, show, I think that the plea was good.

It is to be remembered, that the case is not that of a *sale* of the note, without recourse on the seller.   It is the case of a sale with recourse on the seller, a sale accompanied by his promise to pay the note, if the makers did not pay it.   This promise makes the difference.   Doubtless, if the owner of a note sells it without recourse, for less than it calls for, the purchaser acquires a title to all it calls for, and is not, when he collects it from the maker, liable to pay to the seller, the difference between what he paid the seller, and what he collected.   In that case, although the amount paid for the note, is less than the amount it calls for, yet the purchaser takes

the risk of the maker's solvency; the risk of his having de-fences, &c.   Consequently, it is not a case in which the sel-ler can say that there was any want of consideration.   Even in that case, however, great inadequacy of price, might be a badge of fraud, which would justify the nullification of the sale.   But if he not only sells the note, but promises to see . it paid, there must be a full consideration for that *promise*— to make the promise bind him, to pay the whole of the note; that is to say, there must be a consideration equal to the face of the note.   So I think.   Hence I dissent as aforesaid.